PER CURIAM.
Plaintiffs herein have applied for supervisory writs, and, alternatively, have appealed from judgment of the trial court rejecting their request for declaratory judgment decreeing the nullity of the vote of defendant, Council of the City of New Orleans (Council) taken July 7,1983 overriding the Mayoral veto of Municipal Ordinance 9237, which submits to the electorate of the City of New Orleans (City) a proposed change in the office of Mayor. Injunction is sought against the individual members of the Council, the Council, the Mayor, the State Commissioner of Elections and the Secretary of State, State of Louisiana, proposing inclusion of the allegedly invalid proposal from being included on the ballot in the forthcoming election scheduled for October 22, 1983.
The trial court held the assailed ordinance valid and declined to enjoin its inclusion on the ballot to be prepared for the October 22, 1983, election. We find the ordinance invalid for failure of the Council to follow pertinent provisions of the Home Rule Charter of the City of New Orleans (Charter) and the rules of the Council. Accordingly, we reverse.
In applying for writs, Appellants maintain that a similar ordinance has already been scheduled for inclusion on the October 22, 1983, election ballot and that inclusion of the ordinance in, question will serve only to confuse the electorate. Since the matter is before us and we are in position to decide the matter on its merits and issue the requested injunction which will be effective immediately, subject only to possible Supreme Court review on writs, we prefer to and do consider the matter on appeal rather than issue supervisory writs.
FACTS
An excellent and accurate statement of the case and pertinent facts is contained in the brief of counsel for Plaintiffs, which we adopt as follows:
“Plaintiffs-appellants are citizens, voters, and taxpayers of the City of New Orleans, who filed a Petition for Declaratory and Injunctive Relief on July 20, 1983, seeking a judgment declaring the vote of the Council of the City of New Orleans on July 7, 1983, to override the Mayor’s veto of Ordinance No. 9237 M.C.S., to be ineffective, and to enjoin the Mayor, the City Council, five individual Council members, the Clerk of Council, the Commissioner of Elections, and the Secretary of State from taking any action in furtherance of the invalid Ordinance. On July 22,1983, the Petition was amended to join the City of New Orleans as a defendant and to delete the name of one of three original plaintiffs.
The subject ordinance called for an election to submit to the voters of the City of New Orleans a proposal to amend Article IV of the Home Rule Charter of the City of New Orleans (the “Charter” or the “Home Rule Charter”) to allow for unlimited mayoral terms beginning in 1987. The effect of the proposed amendment would be to allow unlimited terms to anyone except the current mayor. It was passed by the Council on June 16, 1983.
*1181 On June 24, Mayor Morial vetoed the proposed Ordinance, pursuant to Section 4-206(2)(d) of the Home Rule Charter, which Section gives the mayor the power to veto ordinances. Proposed Ordinance 9237 M.C.S. was again presented to the Council at its next regular meeting, July 7, 1983, pursuant to Section 3-113(3) of the Home Rule Charter, which provides that:
Ordinances vetoed by the Mayor shall be presented by the Clerk to the Council at its next regular meeting and should the Council then or at its next regular meeting adopt the ordinance by an affirmative vote of two-thirds of all its members, it shall become law. (emphasis supplied)
Since the Council consists of seven members, five votes are required to override a veto.
At the July 7 meeting of the Council, Mayor Morial appeared and delivered his veto message on proposed Ordinance No. 9237 M.C.S., responded to a question by Councilman Boissiere, and left the Council Chambers, nineteen minutes before the override vote on Ordinance 9237 M.C.S. Immediately upon leaving the Council Chambers, the Mayor stepped into a waiting automobile and was driven directly to New Orleans International Airport where he took the first available flight to Dallas, Texas. He returned on July 8.
Shortly after the Mayor had left the Council Chambers, Councilman Giarrusso gave a speech, during the course of which Ann Wheeler, an employee of the Mayor’s office, handed Councilman Barthelemy a letter informing the Councilman of the Mayor’s absence and of the Councilman’s appointment as Acting Mayor. Thereafter, Ms. Wheeler distributed copies of the letter to the other Councilmen and it was read into the record of the Council.
At that point the Clerk announced the reconsideration of Ordinance 9237 M.C.S., and the Council voted on the question: “Shall the Ordinance pass the objection of the Mayor notwithstanding?”
Sections 3-107 and 4-204(3) of the Home Rule Charter prohibit a councilman who has been appointed Acting Mayor from voting, and Councilman Barthelemy was so advised at the time by City Attorney Salvador Anzelmo. Nevertheless, Acting Mayor Barthelemy voted on Ordinance 9237. His vote, subsequently held invalid by the Trial Court, appeared to give the proponents of the override a 5 to 2 margin. Later that afternoon, after conducting further business, the Council adjourned.
On July 21, 1983, the day after the present suit was filed, the Council met again. The minutes of the July 7 meeting were approved and adopted. After conducting some preliminary business, the Council began discussing another vote to override the Mayor’s veto, as insurance against the possibility that the July 7 vote might be held invalid. Councilman Boissiere moved that the Council “go to reconsider the vote on last week’s override of the vetoed Ordinance.” That motion to reconsider carried 5 to 1. Mr. Anzelmo advised the Council that the override vote could not be reconsidered again because the Council’s Rules forbade reconsideration of a motion to reconsider. At that point, Councilman Early moved to suspend the Rules and Regulations of the Council (the “Rules”). The motion passed, 5 to 1. Councilman Boissiere then moved “to reconsider the vote on this override of the vetoed ordinance”. The vote was 5 to 1 in favor of the override.
On the morning of trial, the Council, five individual Council members, and the Clerk of Council, filed an Answer, Exceptions of No Cause or Right of Action, and a Motion to Dismiss. The Answer denied that the Mayor had indeed been absent from the City at the time the vote was taken, urged that Councilman Barthele-my’s appointment as Acting Mayor was therefore invalid and consequently that the July 7 vote was valid, so that the veto was successfully overridden on July 7. In the alternative, the Answer alleged that Sections 3-107 and 4-204(3) (the Acting *1182 Mayor provisions) of the Home Rule Charter are unconstitutional.
The following provisions of the City’s Charter and rules are pertinent:
Charter Section 3-113 (3):
Ordinances vetoed by the Mayor shall be presented by the Clerk to the Council at its next regular meeting and should the council then or at its next regular meeting adopt the ordinance by an affirmative vote of two-thirds of all its members, it shall become law.
Rule 45 states:
Ordinances returned with the disapproval of the Mayor shall immediately stand as reconsidered...
Rule 40 provides:
A vote or question may be reconsidered at any time during the same meeting, or at the first regular or special meeting held thereafter. A motion for reconsideration having been once made and decided in the negative, shall not be renewed, nor shall a motion to reconsider be reconsidered. (Emphasis by the court).
Charter Section 4-204(2) provides:
In the absence or disability of the Mayor, his office shall be filled by an Acting Mayor who shall be appointed by the Mayor from the two Councilmen-At-Large. If within ten days the Mayor should fail to so appoint an Acting Mayor the district Councilmen shall, by majority vote, appoint one of the Councilmen-At-Large as Acting Mayor.
Charter Section 3-104(3) states:
The appointment of a Councilman as Acting Mayor shall not be deemed to create a vacancy in the office of Councilman-At-Large but while serving as Acting Mayor he shall not perform his duties as a member of the Council. His only compensation shall be that of a Councilman.
Charter Section 3-101(1) provides:
All legislative powers of the City shall be vested in the Council and exercised by it in the manner and subject to the limitations hereinafter set forth. (Emphasis by the court)
Charter Section 3-102 recites:
The Council shall consist of seven members of whom five shall be elected from districts and two from the City at large. Charter Section 3-107 states in part: ... All Councilmen, including the President, shall have the right to vote in the Council at all times, except when serving as Acting Mayor.
Rule 19 of the Council’s rules permits the Council to suspend its rules.
ALLEGED UNCONSTITUTIONALITY OF CHARTER SECTION 3-104(3)
As contended by defendants this provision prohibits a Councilman from voting while serving as Acting Mayor. It is contended simply that this provision is unconstitutional in that it is contrary to Charter Section 3-101(1) which vests all legislative power in the Council and to deprive a Councilman of his vote while serving as acting Mayor is an unwarranted and impermissible restriction upon and invasion of this right.
We find the answer to this contention to be contained in the provisions of Section 3-101(1) itself which clearly recites that the legislative authority granted is expressly made subject to limitations subsequently set forth in the Charter. Section 3-104(3) is an express limitation on the authority granted in 3-101(1). The Charter was submitted to and approved by the electorate of the City with this limitation as part of its intrinsic provision. This being a Home Rule Charter, its provisions may include' any rule not contrary to express law. No such violation has been shown the Court. In adopting the Charter the electorate saw fit to place limitations on the exercise of legislative authority by Councilmen under circumstances clearly set forth. Councilmen have only such authority as was delegated to them.
We find Sections 3-107 and 3-104(3) are not invalid for unwarranted interference with the legislative authority of Councilmen-At-Large.
The trial court held the July 7,1983, attempt to override the Mayor’s veto was *1183 invalid for lack of a two-thirds vote. We find this ruling to be correct. The trial court further held, however, that the Council’s authority to suspend its rules and again vote on the matter is authorized by Charter Section 3-113(3) above, which permits two opportunities to override a mayoral veto. In this holding the trial court erred.
The plaintiffs contend that Section 3-113(3) of the Charter permits the Council only one opportunity to override the May- or’s veto, either by voting upon and adopting the Ordinance at the next regular meeting after the veto or by doing so at its following regular meeting, but not through a favorable vote at either meeting. On the other hand, the defendants’ position is that the Council is authorized to vote to override at both meetings, and if the vote is favorable at either meeting the ordinance becomes the law.
The latter interpretation is contrary to the Council’s own Rules 40 and 45, which are quoted above. Although the Council attempted to suspend these rules retroactively at the second meeting, apparently they were adopted by the Council long prior to the present incident, and certainly reflect the Council’s own interpretation of Section 3-113(3) of the Charter. It is clear that if this section of the Charter is interpreted by us as defendant’s wish, Rule 40 would be invalid. It specifically provides that there be only one vote upon consideration of a veto.
The authorities from other states that have been cited to us also appear to support the plaintiffs’ position that there can be no legislative reconsideration of a vote which fails to override an executive’s veto.
We agree that such is the proper interpretation of this section of the Charter as it establishes only a time frame within which the Ordinance may be adopted by a two-thirds vote and does not authorize voting on the Ordinance more than once.
We might also add that in our opinion the Council’s action at the second meeting in suspending its rules and voting to reconsider its prior vote was improper and without effect. Rules 40 and 45 were in effect when the vote to override failed at the first meeting. Therefore, the action was no longer subject to reconsideration under these rules, and it became final after the vote was tallied. This view is fortified by the adoption of the minutes of the first meeting before any attempt was made to suspend the Council’s rules. Consequently the Council’s subsequent step to suspend the rules was an invalid attempt to do so retroactively.
For these reasons we conclude that the Ordinance in question was validly vetoed by the Mayor and is of no effect.
IT IS ORDERED, ADJUDGED AND DECREED that judgment be and the same is hereby rendered herein, declaring the vote of the Council of the City of New Orleans on July 7, 1983, and on July 21, 1983, to override the Mayor’s veto of Ordinance No. 9237 M.C.S. to be null, void and without any legal effect whatsoever;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a preliminary injunction issue herein, enjoining defendants herein from placing on the October 22, 1983 ballot, a proposition to amend Section 4-201 of the Home Rule Charter, pursuant to Ordinance No. 9237 M.C.S.; enjoining and prohibiting the Honorable Ernest N. Morial, Mayor, from directing city employees from performing functions necessary to the holding of the election on the proposed amendment; enjoining and prohibiting the Council of the City of New Orleans and its members, individually and collectively, from performing any act in furtherance of the invalid Ordinance No. 9237 M.C.S., including, but not limited to, placing on the October 22,1983 ballot of the proposed amendment; enjoining and mandating the Honorable Lea Siegel, Clerk of the Council of the City of New Orleans, to expunge Ordinance No. 9237 M.C.S. from the current and comprehensive index of all ordinances; enjoining and ordering Jerry M. Fowler, Commissioner of Elections, to refrain from taking or ordering any action in aid or furtherance of the election on the proposed amendment.
*1184 Costs in this matter are assessed against defendants, governmental entities and officials, as authorized by law, the amount to be determined by rule to tax costs upon the finality of this judgment.