DIXON, Chief Justice
(dissenting).
I respectfully dissent.
This action was brought to contest the validity of the vote of the City Council to override the Mayor’s veto of a City Ordinance. The trial court upheld the Council’s override of the veto. The court of appeal reversed, upholding the veto, declaring invalid the efforts of the Council to override. On the application of the Council, we granted writs.
The matter is one of pure statutory interpretation. Twice the City Council voted to override the veto. The City Charter and the Council’s rules do not prohibit what the Council did, and can reasonably be interpreted to permit the Council’s action. Since five of the seven Council members have voted twice to override the Mayor’s veto, the will of that majority should be given effect if its action can be reasonably interpreted to comply with the City Charter and the Council rules. To hold otherwise is to ignore the realities of the case and thwart the democratic process.
THE CHARTER
The Home Rule Charter of the City of New Orleans is the municipality’s equivalent to a constitution. Every action taken by either the Mayor or Council must conform to the mandate of the Charter. It is in light of the Charter, therefore, that the July 21 vote must be judged.
The relevant part of the Charter is § 3-113(3), which reads:
“Ordinances vetoed by the Mayor shall be presented by the Clerk to the Council at its next regular meeting and should the Council then or at its next regular meeting, adopt the ordinance by an affirmative vote of two-thirds of all of its members, it shall become law.”
There is no question about the timeliness of the presentation of the veto. The only thing at issue is the meaning of the phrase “then or at its next regular meeting.”[1] This clause is subject to two interpretations. The first, urged by the plaintiffs, is that the Council may decide to override the veto at either of the two meetings, but not at both. The second interpretation, presented by the defendants, and accepted by the court of appeal, is that “this section of the Charter ... establishes only a time frame within which the Ordinance may be adopted ...” Burstein v. Morial, 437 So.2d 1179, 1183 (La.App. 4th Cir.1983) (per curiam).
This second interpretation of the Charter, is the correct one. The court of appeal’s conclusion, however, that the Charter “does not authorize voting on the Ordinance more than once,” is incorrect. The Charter states only that the Council may, at either of the two meetings, adopt the ordinance. It does not purport, in any way, to determine the •number of votes which may, or should, be taken on the veto; it establishes only a two-meeting time period within which the veto must be considered. If the veto is not considered by the end of the second meeting, it may never be considered.
There is no prohibition in the Charter to the Council’s second vote on the veto. Since the July 21 meeting was the next *562 regular meeting of the Council, the action taken on the veto was within the Charter’s two-meeting time limit, and, therefore, “constitutionally” sound.
THE COUNCIL RULES
Since there is no “constitutional” barrier to the Council’s second vote to override the Mayor’s veto of the proposed ordinance, this court should look to the internal rules of the Council. If, by the Council’s own rules, the Council was prohibited from voting a second time on the veto, the override of the veto must fall.
The pertinent rules are Rules 40 and 45. “Rule 40. A vote or question may be reconsidered at any time during the same meeting, or at the first regular or special meeting held thereafter.
A motion for reconsideration, having been once made and decided in the negative, shall not be renewed, nor shall a motion to reconsider be reconsidered.” “Rule 45. Ordinances returned with the disapproval of the Mayor shall immediately stand as reconsidered. The Clerk shall enter the objections of the Mayor thereto at large upon the Journal and the Council shall proceed to consider the question:
‘Shall the Ordinance pass, the objection of the Mayor notwithstanding?’
The vote shall be taken by yeas and nays and entered upon the Journal. If two-thirds of all the members vote to pass the ordinance, the presiding officer shall certify the fact thereon over his signature.”
It is argued that there can be only one consideration of the Mayor’s veto by the Council, because, by operation of Rule 45, the veto stands as “reconsidered,” and Rule 40 says a motion for reconsideration, once decided in the negative, cannot be reconsidered. Reading the two Rules together, it is argued, the Council is restricted to one vote to override a veto. This argument is not supported by either the Rules or by the facts.
The “reconsideration” contemplated by Rule 45 merely tracks the language of Charter § 3-113(3), which compels the May- or to return his veto to the Council, and allows the Council to consider the veto. It only ensures that the issue will be addressed by the Council a second time. See, e.g., Board of Education v. City of New York, 41 N.Y.2d 535, 394 N.Y.S.2d 148, 152, 362 N.E.2d 948, 952 (1977). It does not mean that the issue is a procedural “reconsideration.” This is borne out by the rest of the text of Rule 45, which states “the Council shall proceed to consider the question: ‘Shall the Ordinance pass, the objection of the Mayor notwithstanding?’ ” Thus, when the Council first voted on the veto at its July 7 meeting, it merely considered the issue for the first time. The question was not reconsidered until there was an affirmative vote on Councilman Boissiere’s motion to reconsider on July 21.
Furthermore, Rule 40 only provides that a “motion for reconsideration” once defeated cannot be reconsidered. There is no evidence in the record to indicate that there was ever a motion to reconsider the veto raised at the July 7 meeting. Consequently, the motion to reconsider, raised by Councilman Boissiere on July 21, was the first motion for reconsideration, and that motion was not defeated.
It has been argued that Robert’s Rules of Order allow a motion to reconsider to stand only if it is made at the same meeting at which the first vote was taken, and, since no such motion was raised at the July 7 meeting, the Council could not reconsider the veto. This argument is without merit. There is no provision in the Council’s Rules which require that a motion to reconsider be raised at the same meeting as the first vote; in fact, the Rules provide two opportunities to reconsider. “A vote or question may be reconsidered at any time during the same meeting, or at the first regular or special meeting held thereafter.” Rule 40. No other formal procedure is required for a reconsideration.
An additional fact merits attention. At the July 21 meeting, Councilman Early moved to suspend the Rules, pursuant to Rule 19. This motion passed. By so suspending the Rules, Rules 40 and 45 became *563 inoperative. As a result of this suspension of the Rules, the Council removed any remnant of Rule-founded prohibition against a reconsideration. The only limitation on the Council at that point was the Charter itself. And, as already discussed, the Charter does not bar multiple votes in an attempt to override a veto. Once the Rules were suspended, the Council could determine what procedures it would follow. This is a legislative body’s prerogative. See State v. Gray, 221 La. 868, 60 So.2d 466, 468 (1952).
The only serious contention is that the suspension of the Rules at the July 21 meeting was applied retroactively to the July 7 meeting. It is argued that there was a “vesting” in the public of the knowledge that the veto was not overridden. This argument lacks merit for several reasons. First, according to the Charter, there is no reasonable expectation of finality on a veto until the adjournment of the second meeting after the presentation of the veto to the Council. It should be noted, however, that had the Council successfully overridden the veto at the first meeting, the ordinance would have become law at noon of the following day. Charter § 3-113(5). The Council, at the conclusion of its July 7 meeting, believed that the ordinance had been adopted, notwithstanding the Mayor’s veto. Thus, any expectation of finality was that the veto was overridden, and not that the veto was sustained. Second, according to the Rules themselves, as already discussed, the Council could reconsider the vote even in the absence of the suspension of the Rules. There could not be a reasonable expectation of finality when everyone was on. notice that the Council still had the opportunity to reconsider the vote to override the veto at its next meeting.
I would hold that the actions of the Council were within the bounds of their own Rules, and that there is no meritorious issue of unlawful retroactive effect. Because the Council’s actions were not prohibited by the Charter, or by their Rules, the vote of July 21, 1983, to override the Mayor’s veto of M.C.S. Ordinance Number 9237 should be upheld. I would reverse the decision of the court of appeal.

. The “all of its members” clause also was at issue in this case. It was argued that, since Acting Mayor Barthelemy was prohibited from performing any of his councilmanic functions, Charter §§ 3-107 and 4-204(3), his position on the Council should be considered as legally nonexistent during his tenure as Acting Mayor. If this view were adopted, then only two-thirds of six members would be required instead of two-thirds of the usual seven members.